UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MIAMI PRODUCTS & CHEMICAL CO., On Behalf of Itself and All Others Similarly Situated, et al.,

Plaintiffs,

v.

OLIN CORPORATION, et al.,

Defendants.

**DECISION AND ORDER**

1:19-CV-00385 EAW

---

THE TRIPP PLATING WORKS, INC., On Behalf of Itself and All Others Similarly Situated, et al.,

Plaintiffs,

v.

OLIN CORPORATION, et al.,

Defendants.

1:19-CV-00975 EAW

---

PRECIOUS PLATE, INC., On Behalf of Itself and All Others Similarly Situated, et al.,

Plaintiffs,

v.

OLIN CORPORATION, et al.,

Defendants.

1:19-CV-00990 EAW

---

## INTRODUCTION

Plaintiffs The Tripp Plating Works, Inc. ("Tripp") and Precious Plate, Inc. ("Precious Plate") (collectively the "Indirect Purchaser Plaintiffs") bring these putative class actions against defendants Olin Corporation, K.A. Steel Chemicals, Inc., Occidental Chemical Corporation, Westlake Chemical Corporation, Shintech Incorporated, and Formosa Plastics Corporation, U.S.A. (collectively, "Defendants"), alleging an anticompetitive conspiracy by Defendants to fix the price of caustic soda in the United States. (Dkt. 129)[1].

Presently before the Court is a motion filed by Defendants seeking dismissal of the following claims asserted by the Indirect Purchaser Plaintiffs: (1) consumer protection claims asserted under the laws of various states, as set forth more specifically below; (2) antitrust claims asserted under the laws of various states, as set forth more specifically below; and (3) unjust enrichment claims asserted under the laws of various states, as set forth more specifically below. (Dkt. 174)[2]. For the reasons that follow, Defendants' motion is granted in part and denied in part.

---

[1] Unless otherwise noted, all docket references herein refer to Civil Action No. 19-cv-00385 (the "Lead Action").

[2] Defendants Shin-Etsu Chemical Co. Ltd. and Formosa Plastics Corporation have individually filed renewed motions to dismiss for lack of personal jurisdiction (Dkt. 230; Dkt. 288), which the Court grants in a separate Decision and Order filed contemporaneously herewith. Accordingly, all claims asserted against these defendants are dismissed without prejudice, and this Decision and Order does not consider the merits of the claims asserted against them.

# BACKGROUND

## I. Factual Background

As noted above, the instant actions relate to a purported anticompetitive conspiracy by Defendants to fix the price of caustic soda in the United States. (Dkt. 129). The details of the alleged conspiracy are set forth at length in this Court's Decision and Order dated March 27, 2020, resolving several prior motions to dismiss (Dkt. 119), familiarity with which is assumed for purposes of this Decision and Order. The Indirect Purchaser Plaintiffs are New York corporations that "indirectly purchased Caustic Soda manufactured by one or more of the Defendants" during the relevant time period. (Dkt. 129 at ¶¶ 18-19).

## II. Procedural Background

The Lead Action was filed on March 22, 2019 (Dkt. 1), and reassigned to the undersigned on May 8, 2019 (Dkt. 40). The Lead Action and various related putative class actions brought by direct purchasers of caustic soda were referred for the handling of non-dispositive pretrial matters to United States Magistrate Judge Michael J. Roemer (Dkt. 42), who entered a scheduling and case management order on May 17, 2019, consolidating the cases for pretrial purposes (Dkt. 49).

Tripp commenced its putative class action on July 25, 2019. (Civil Action No. 19-cv-00785 (the "Tripp Action"), Dkt. 1). Precious Plate commenced its putative class action on July 29, 2019. (Civil Action No. 19-cv-00990 (the "Precious Plate Action"), Dkt. 1). Both matters were referred to Judge Roemer for the handling of non-dispositive pretrial

matters. (Tripp Action, Dkt. 8; Precious Plate Action, Dkt. 6). On September 19, 2019, Judge Roemer entered a Case Management Order (Tripp Action, Dkt. 11; Precious Plate Action, Dkt. 10) consolidating the Tripp Action and the Precious Plate Action into the Lead Action.

The Indirect Purchaser Plaintiffs filed a consolidated class action complaint on April 16, 2020. (Dkt. 129) (the "indirect purchaser complaint"). Defendants filed the instant motion to dismiss on May 28, 2020. (Dkt. 174). The Indirect Purchaser Plaintiffs filed their response on July 13, 2020 (Dkt. 195), and Defendants filed their reply on August 12, 2020 (Dkt. 202).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. <u>The Indirect Purchaser Plaintiffs' Claims</u>

The indirect purchaser complaint sets forth the following claims: (1) violations of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) "restraint of trade" in violation of the laws of Arizona, California, Connecticut, the District of Columbia, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin; (3) "unfair and deceptive trade practices" in violation of the laws of Alaska, Arkansas, Arizona, California, Colorado, Delaware, the District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah,

Vermont, Virginia, West Virginia, Wisconsin, and Wyoming; and (4) unjust enrichment "under the law of the District of Columbia and the laws of all states and territories in the United States, except Ohio and Indiana." (Dkt. 129 at 51-63). In addition to other forms of relief, the Indirect Purchaser Plaintiffs seek an injunction pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26. (*Id*. at 6).

In their motion papers, Defendants seek dismissal of thirty-eight of the Indirect Purchaser Plaintiffs' state consumer protection claims, twenty-one of the Indirect Purchaser Plaintiffs' state law antitrust claims, all of the Indirect Purchaser Plaintiffs' unjust enrichment claims, and the Indirect Purchaser Plaintiffs' request for injunctive relief under § 16 of the Clayton Act. (Dkt. 174-1). However, in their further briefing, the parties narrowed their disputes regarding the state consumer protection claims. Specifically, in their opposition papers, the Indirect Purchaser Plaintiffs voluntarily withdrew their consumer protection claims asserted under the laws of Arkansas, Delaware, the District of Columbia, Georgia, Idaho, Indiana, Kansas, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Pennsylvania, Rhode Island, South Carolina, Virginia, Wisconsin, and Wyoming. (Dkt. 195 at 29 n. 12)[3]. In their reply papers, Defendants then indicated

[3] In their reply papers, Defendants suggest that the Court should dismiss these withdrawn claims with prejudice. (Dkt. 202 at 12). The Court rejects this contention. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may voluntarily dismiss a claim without prejudice before an opposing party serves either an answer or a motion for summary judgment. While the Indirect Purchaser Plaintiffs did not file a notice of dismissal as contemplated by Rule 41, they could have done so, and the Court finds no reason to punish the Indirect Purchaser Plaintiffs for their attempt to narrow the dispute by entering a dismissal with prejudice of the claims they have voluntarily withdrawn with prejudice.

that they are no longer seeking dismissal of the Indirect Purchaser Plaintiffs' consumer protection claims asserted under the laws of Florida, Nebraska, New Mexico, New York, South Dakota, and Vermont. (Dkt. 202 at 12 n.2). The Court thus limits its consideration of the consumer protection claims to those arising under the laws of Alaska, Arizona, California, Colorado, Illinois, Minnesota, Montana, New Hampshire, New Jersey, North Carolina, North Dakota, Oregon, Utah, and West Virginia.

### A. State Law Consumer Protection Claims

For the reasons discussed below, the Court finds that the Indirect Purchaser Plaintiffs' consumer protection claims asserted under the laws of Alaska, Arizona, California, Illinois, Montana, New Hampshire, New Jersey, North Carolina, Oregon, Utah, and West Virginia are subject to dismissal. The claims asserted under the laws of Colorado, Minnesota, and North Dakota will be permitted to proceed.

#### 1. Status as Consumers under Montana and Utah Law

Defendants seek dismissal of the Indirect Purchaser Plaintiffs' claims under the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101 *et seq.* (the "MUTPCPA"), and the Utah Consumer Sales Practices Act, Utah Code § 13-11-4 (the "UCSPA"), on the basis that these statutes only protect "consumers." The Court agrees that dismissal of these claims is required.

"The MUTPCPA enables a 'consumer' to bring an action for damages, Mont. Stat. § 30-14-133(1), and defines 'consumer' as 'a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes,' *id.* § 30-14-102(1)." *Sergeants Benevolent Ass'n Health & Welfare Fund v.*

*Actavis,* No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *46 (S.D.N.Y. Dec. 26, 2018). The Supreme Court of Montana has held that the purchase of goods "entirely for business purposes" does not "not come within the statutory definition of a purchase or lease of goods primarily for personal, family or household purposes." *Doll v. Major Muffler Centers*, *Inc*., 208 Mont. 401, 410 (1984); *see also Sergeants Benevolent Ass'n*, 2018 WL 7197233, at *46 (dismissing claims under the MUTPCPA because the plaintiff was not a "consumer" within the meaning of the MUTPCPA); *In re Lidoderm Antitrust Litig.,* 103 F. Supp. 3d 1155, 1165 (N.D. Cal. 2015) (dismissing claims under the MUTPCPA brought by indirect purchaser of Lidoderm patches because "[t]he statute excludes persons who buy goods for resale"). Here, the Indirect Purchaser Plaintiffs do not allege that they purchased caustic soda "primarily for personal, family, or household purposes." To the contrary, they allege that they (and the other members of the putative classes) purchased caustic soda from Defendants for "non-residential use." (Dkt. 129 at ¶ 9). The Court accordingly agrees with Defendants that the Indirect Purchaser Plaintiffs have not alleged a viable claim under the MUTPCPA.

The UCSPA similarly "affords a cause of action only to a 'consumer.'" *Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, No. 1:16-CV-00168-DBP, 2018 WL 1183372, at *5 (D. Utah Mar. 6, 2018) (quoting Utah Code § 13-11-19). The UCSPA further defines a "consumer transaction" as:

> [A] sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for: (i) primarily personal, family, or household purposes; or (ii) purposes that relate to a business opportunity that requires . . . the person described in

> Subsection (2)(a) to perform personal services on a continuing basis and in which the person described in Subsection (2)(a) has not been previously engaged.

Utah Code § 13-11-3(2)(a). As previously noted, the Indirect Purchaser Plaintiffs do not claim to have purchased caustic soda for "primarily personal, family, or household purposes," nor are there any facts in the indirect purchaser complaint to support the conclusion that the sales of caustic soda at issue were made "apparently to" a person for such purposes—to the contrary, the indirect purchaser complaint indicates that caustic soda is a "commodity chemical" that is sold and used for industrial purposes. (Dkt. 129 at ¶ 2). The Indirect Purchaser Plaintiffs further do not claim to have entered into an agreement to perform personal services for Defendants. These facts fail to plausibly allege a violation of the UCSPA.

### 2. Definition of "Good or Service" Under Oregon Law

Defendants' argument regarding the Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.605 *et seq.* (the "OUTPA") is also related to the purposes for which the purchases were made. As relevant here, it is unlawful under the OUTPA to make "false or misleading representations of fact concerning the offering price of . . . real estate, goods, or services." Or. Rev. Stat. § 646.608(s); *see also* Or. Rev. Stat. § 646.638. The OUTPA further defines "real estate, goods or services" to mean "those that are or may be obtained primarily for personal, family or household purposes, or that are or may be obtained for any purposes as a result of a telephone solicitation." *Id.* § 646.605(6)(a).

As Defendants correctly point out, there is nothing in the indirect purchaser complaint suggesting that the Indirect Purchaser Plaintiffs or the members of the putative

class obtained caustic soda "primarily for personal, family or household purposes." To the contrary, as already noted by the Court, there is an express allegation that the caustic soda at issue was obtained for "non-residential use." (Dkt. 129 at ¶ 9). There is further no indication that the sales of caustic soda were the result of a "telephone solicitation," which the OUTPA defines as "solicitation where a person, in the course of the person's business, vocation or occupation, uses a telephone or an automatic dialing-announcing device to initiate telephonic contact with a potential customer[.]" Or. Rev. Stat. § 656.605(7). Accordingly, dismissal of the Indirect Purchaser Plaintiffs' claims under the OUTPA is warranted. *See F.D.S. Marine, LLC v. Shaver Transp. Co.*, No. 00-1245-ST, 2001 WL 34045718, at *1 (D. Or. May 25, 2001) (dismissing claims under the OUTPA because the services and goods at issue were "not generally and customarily used for personal, family, or household uses").

### 3. ***Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and Consumer Protection Claims Under Alaska and New Jersey Law**

The Court turns next to Defendants' arguments regarding the interaction between the Supreme Court's ruling in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and the Indirect Purchaser Plaintiffs' claims brought under the consumer protection laws of Alaska and New Jersey. A brief discussion of the ruling in *Illinois Brick* and how it interacts with state law is thus necessary.

In *Illinois Brick*, the Supreme Court "held that direct purchasers may sue antitrust violators, but also ruled that indirect purchasers may not sue." *Apple Inc. v. Pepper*, ___ U.S. ___, 139 S. Ct. 1514, 1519 (2019). The Supreme Court subsequently ruled in

*California v. ARC America Corp.*, 490 U.S. 93 (1989), that state laws allowing for recovery by indirect purchasers are not preempted by federal law. *Id*. at 105-06. In other words, the federal "'indirect-purchaser rule' does not prevent indirect purchasers from recovering damages under state antitrust laws where the state laws otherwise allow it." *In re Aggrenox Antitrust Litig*., 94 F. Supp. 3d 224, 248 (D. Conn. 2015). Some states have opted to follow the rule set down in *Illinois Brick*, while others have passed laws expressly allowing for recovery by indirect purchasers. "[A]ny state that has not expressly passed *Illinois Brick* repealer legislation or interpreted its law in such a way as to override the rule of *Illinois Brick* is presumed to have decided to follow federal law, including the *Illinois Brick* limitation on indirect purchaser claims." *In re Digital Music Antitrust Litig*., 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011).

As another federal district court recently explained, Alaska has passed a statute that partially repeals *Illinois Brick*—Alaska Stat. § 45.50.577(i), which allows the Alaska attorney general to "bring an antitrust claim for damages on behalf of indirect purchasers under Alaska's Restraint of Trade Act." *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 849 (N.D. Ill. 2020). However, Alaska has not passed a statute repealing *Illinois Brick* more generally, and as such, "no court has construed Alaska's consumer protection statute (Alaska Stat. Ann. § 45.50.531(a)) to permit claims based on alleged antitrust and monopolization conduct by indirect purchasers." *In re Lidoderm Antitrust Litig*., 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015). To the contrary, the courts that have considered the matter have concluded that Alaska's consumer protection statute "precludes plaintiffs from bringing claims as indirect purchasers even under a non-antitrust unfair

practices theory." *In re Humira*, 465 F. Supp. 3d at 849; *see also In re Lidoderm*, 103 F. Supp. 3d at 1163 (dismissing claims by indirect purchasers under the Alaska consumer protection statute "in light of the clear intent of the Alaska antitrust statute reserving to the Alaska Attorney General the ability to seek damages on behalf of indirect purchasers"); *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007) ("[T]he court therefore declines to read the [Alaska consumer protection statute] to permit indirect purchaser standing, since no court has affirmatively found to the contrary, and since, under the current status of the law in Alaska, only the attorney general may sue for money damages on behalf of indirect purchasers as a result of antitrust violations."). The Court agrees with the analysis of the other courts who have considered this issue and accordingly dismisses the Indirect Purchaser Plaintiffs' consumer protection claims under the laws of Alaska.

As to New Jersey, that state "follow[s] federal antitrust law in interpreting [its] own antitrust statute, *see* N.J.S.A. 56:9-18, and under *Illinois Brick* . . . indirect purchasers . . . have no standing to assert a private right of action under the New Jersey Antitrust Act." *Wilson v. Gen. Motors Corp.*, 190 N.J. 336, 339 (2007) (quotations and citations omitted). The Supreme Court of New Jersey has further held that, consistent with New Jersey's status as a state that follows *Illinois Brick*, the New Jersey Consumer Fraud Act, N.J.S.A. 56.8-1 *et seq.* (the "NJCFA"), does not allow for a cause of action based on "an anticompetitive scheme in violation of the Antitrust Act without any allegation of a direct or indirect statement or communication with any plaintiff." *Id*. at 341; *see also In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 27 (D. Mass. 2004) (noting that "consumer fraud claims may create

precisely the risk of 'multiple recoveries,' which *Illinois Brick* (and parallel New Jersey decisions) seek to avoid").

Defendants argue that the Indirect Purchaser Plaintiffs have not alleged "communications with, or directed to, consumers," *Wilson*, 190 N.J. at 341, and so cannot maintain a claim under the NJCFA. The Court agrees. The only "communications" that the Indirect Purchaser Plaintiffs identify in opposition to Defendants' motion are information provided by Defendants to IHS Markit, an "industry analyst and consultant." (Dkt. 129 at 38-39). This information was then allegedly used by IHS Markit in its management of a caustic soda pricing index. (*Id.*). However, there is no allegation or suggestion in the indirect purchaser complaint that the information provided to IHS Markit was subsequently communicated to any consumer. To the contrary, the Indirect Purchaser Plaintiffs expressly allege that "[f]or purposes of calculating the indexed price [of caustic soda], IHS Markit operates confidentially and non-publicly[.]" (*Id.* at 39). On these facts, no reasonable trier of fact could conclude that Defendants had engaged in communications, whether direct or indirect with a consumer, including the Indirect Purchaser Plaintiffs. Accordingly, the Supreme Court of New Jersey's opinion in *Wilson* bars the Indirect Purchaser Plaintiffs' claims under the NJCFA.

**4. <u>Necessity of Pleading Reliance or Deception</u>**

The Court turns next to Defendants' arguments that the Indirect Purchaser Plaintiffs have not pled viable claims under the consumer protection laws of Arizona, California, North Carolina, and West Virginia because they have not alleged that they relied on any misrepresentation by Defendants. The Court notes as an initial matter that

the Indirect Purchaser Plaintiffs concede that they have not pled reliance (*see* Dkt. 195 at 39 ("Plaintiffs here do not allege that Defendants' misrepresentation induced Plaintiffs to buy caustic soda.")). As such, the issue before the Court is whether these states' consumer protection laws require reliance as an element of a claim.

The Arizona Consumer Fraud Act (the "ACFA") "prohibits persons from engaging in 'any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission' in connection with the sale or advertisement of consumer goods or services." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826 (D. Ariz. 2016) (quoting Ariz. Rev. Stat. § 44-1522(A)). "The elements of a private cause of action under the Arizona Consumer Fraud Act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Naiman v. Alle Processing Corp.*, No. CV20-0963-PHX-DGC, 2020 WL 6869412, at *5 (D. Ariz. Nov. 23, 2020) (citation omitted). Under the ACFA, "[a]n affirmative misrepresentation causes injury where the consumer actually relies on the statement, although the consumer's reliance does not need to be justifiable." *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1023 (D. Ariz. 2017) (quotation omitted and emphasis added). Because proximate injury is an element of an ACFA claim, and because actual reliance is required to establish proximate injury, the Court agrees with Defendants that the ACFA claims must be dismissed.

The Court also agrees that the Indirect Purchaser Plaintiffs' claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200 *et seq.* (the

"CUCL"), fail as a matter of law. The Supreme Court of California has held that the language of the CUCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the [CUCL's] fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). While it is true, as the Indirect Purchaser Plaintiffs point out, that the *In re Tobacco II* court also held that "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," *id*. at 327, any such presumption has been rebutted in this case because, as noted above, the Indirect Purchaser Plaintiffs concede that they did not rely on any misrepresentations by the Defendants in deciding to purchase caustic soda. (Dkt. 195 at 39-40 ("Plaintiffs here do not allege that Defendants' misrepresentation induced Plaintiffs to buy caustic soda. . . . Caustic soda is a commodity used in Plaintiffs' respective businesses—they have been buying caustic soda long before Defendants began making their misrepresentations.")). On these admitted facts, the Indirect Purchaser Plaintiffs cannot maintain a claim under the CUCL.

Similarly, the Supreme Court of North Carolina has held that a claim under North Carolina's unfair or deceptive trade practices act, N.C. Gen. Stat. § 75–1.1, "stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 88 (2013); *see also Topshelf Mgmt., Inc. v. Campbell-Ewald Co*., 117 F. Supp. 3d 722, 730 (M.D.N.C. 2015) ("Section 75–1.1 claims founded on fraud distill to analogous elements: detrimental reliance on deceptive information."). The Indirect Purchaser Plaintiffs' concession that they did not rely on the

purported misrepresentations by Defendants is thus fatal to their consumer protection claims asserted under North Carolina law.

The Court also agrees with Defendants with respect to the Indirect Purchaser Plaintiffs' West Virginia consumer protection claims. The Supreme Court of Appeals of West Virginia has construed the West Virginia Consumer Credit and Protection Act, W.V. Stat. §§ 46a-1-101 *et seq*. (the "WVCCPA"), and held that:

> When consumers allege that a purchase was made because of an express or affirmative misrepresentation, the causal connection between the deceptive conduct and the loss would necessarily include proof of reliance on those overt representations . . . [and that] where concealment, suppression or omission is alleged, and proving reliance is an impossibility, the causal connection between the deceptive act and the ascertainable loss is established by presentation of facts showing that the deceptive conduct was the proximate cause of the loss. In other words, the facts have to establish that 'but for' the deceptive conduct or practice a reasonable consumer would not have purchased the product and incurred the ascertainable loss.

*White v. Wyeth*, 227 W. Va. 131, 140 (2010). Here, the Indirect Purchaser Plaintiffs premise their consumer protection claims on express misrepresentations by Defendants (*see* Dkt. 195 at 39-40), and so they are required to demonstrate reliance. Moreover, even if the Indirect Purchaser Plaintiffs were premising their WVCCPA claims on an alleged omission or concealment by Defendants, they have not alleged facts suggesting that the claimed deception was a "but for" reason for a reasonable consumer to purchase the product—to the contrary, the Indirect Purchaser Plaintiffs have affirmatively alleged that the demand for caustic soda is "relatively inelastic" and that there are no viable substitutes for caustic soda in the various industries in which it is used. (*Id*. at 46). The Court

accordingly finds that the Indirect Purchaser Plaintiffs' WVCCPA claims are subject to dismissal.

Defendants have made a related but distinct argument regarding the Indirect Purchaser Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 IL Stat. §§ 505/1 *et seq*. (the "ICFDBPA"). Specifically, Defendants contend that the Indirect Purchaser Plaintiffs have not alleged deception, as required to state a claim under the ICFDBPA. The Supreme Court of Illinois has explained that under the ICFDBPA, "proof of actual deception of a plaintiff is required," but such deception need not "be direct between the defendant and the plaintiff." *Shannon v. Boise Cascade Corp*., 208 Ill. 2d 517, 525 (2004). Instead, it is sufficient if the defendant deceives a third party, if the deception is "made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage." *Id*. at 526 (citation omitted and emphasis added).

The Court agrees that, under the standard set by the Supreme Court of Illinois in *Shannon*, the Indirect Purchaser Plaintiffs have not stated a viable claim under the ICFDBPA. As another federal district court has explained, the *Shannon* holding means that "a consumer may suffer actual damages from [the defendant's deceptive statements] if the consumer purchased a product as a result of the [defendant's] deception of another." *In re Bextra & Celebrex Mktg., Sales Pracs. & Prod. Liab. Litig*., No. MDL 05-01699 CRB, 2007 WL 2028408, at *3 (N.D. Cal. July 10, 2007) (emphasis added). Again, the Indirect Purchaser Plaintiffs have conceded that they did not purchase caustic soda as a result of Defendants' claimed misrepresentations, and so they cannot satisfy the

requirements of a claim under the ICFDBPA. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199 (2005) ("[I]n a case alleging deception under the [ICFDBPA], it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, in some manner, deceived by the misrepresentation." (quotation omitted)).

**5. Failure to Allege Intrastate Effects as Required by New Hampshire Law**

To state a valid claim under the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:2 (the "NHCPA"), a plaintiff must demonstrate that the defendant engaged in an unfair method of competition or an unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *Ortiz v. Sig Sauer, Inc*., 448 F. Supp. 3d 89, 107 (D.N.H. 2020) (quotations omitted). "For purposes of the statute, a misrepresentation is made 'within-this-state' when New Hampshire is the locus of the offending conduct, or, put differently, whenever a person receives a misrepresentation in the State of New Hampshire." *Id.* (quotation omitted). The Court agrees with Defendants that the Indirect Purchaser Plaintiffs have failed to alleged conduct within New Hampshire within the context of a claim under the NHCPA. *Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327 (D.N.H. 2012), is instructive. There, the plaintiff sought to assert a claim under the NHCPA based on the allegation that the defendant falsely "represented that its beef trim was fit for human consumption when shipping that beef to a New York company that was known to distribute its own products, incorporating [the defendant's] beef, within the State of New Hampshire." *Id.* at 344. The court dismissed

the NHCPA claim, explaining that relevant case law provides "no support for the proposition that a seller may be liable for a misrepresentation about the quality of its goods not just in the place where that seller's buyer receives the misrepresentation but, also, in any location to which that buyer may later send the goods it received in conjunction with the initial seller's misrepresentation." *Id*.

In this case, as discussed above, the alleged misrepresentations were made to IHS Markit. The indirect purchaser complaint does not allege that any of these misrepresentations were made or received in New Hampshire. The fact that the Indirect Purchaser Plaintiffs (or members of the putative classes) may have subsequently purchased caustic soda in New Hampshire at allegedly inflated prices simply does not bring the claimed conduct within the ambit of the NHCPA. The Indirect Purchaser Plaintiffs' NHCPA claims must be dismissed.

#### 6. **Consumer Protection Claims Under Colorado, Minnesota, and North Dakota Law**

In their opening memorandum of law, Defendants make the following arguments: (1) the Indirect Purchaser Plaintiffs have failed to comply with Federal Rule of Civil Procedure 9(b) in pleading their consumer protection claims under the laws of Colorado, Minnesota, and North Dakota; (2) the Indirect Purchaser Plaintiffs' claims under the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101 *et seq.* (the "CCPA"), fail because they have not alleged unlawful conduct directed at consumers or significantly affecting the consuming public; and (3) the Indirect Purchaser Plaintiffs have not alleged deceptive or

fraudulent conduct as required under the consumer protection laws of Minnesota and North Dakota. The Court rejects these arguments, for the reasons discussed below.

The Court turns first to Defendants' argument regarding Rule 9(b). The Second Circuit has held that a consumer protection claim based on a state statute that "extends well beyond common-law fraud to cover a broad range of deceptive practices" and "does not require proof of the same essential elements (such as reliance) as common-law fraud . . . is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the . . . notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (citations omitted and reversing district court's dismissal of claims under New York's consumer protection law for failure to comply with Rule 9(b)). The consumer protection laws of Colorado, Minnesota, and North Dakota all fall within this category, and so the Indirect Purchaser Plaintiffs were not required to comply with Rule 9(b) in asserting their claims under these statutes. *See, e.g., Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003) (Supreme Court of Colorado holding that reliance is not required under the CCPA; it is sufficient that "the false representation had the capacity or tendency to deceive, even if it did not"); *Ford Motor Credit Co. v. Majors*, No. A04-1468, 2005 WL 1021551, at *3 (Minn. Ct. App. May 3, 2005) (the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48 (the "MUDTPA") "define[s] violations based on conduct by the defendant and do[es] not require reliance by the plaintiff"); *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D. 1986) (Supreme Court of North Dakota

distinguishing between common law fraud and claims under the North Dakota consumer fraud statute).

Defendants' arguments specific to the laws of Colorado, Minnesota, and North Dakota fare no better. With respect to the CCPA, as Defendants note, one element of a claim thereunder is that a defendant's conduct "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1149 (10th Cir. 2009) (quoting *Rhino Linings*, 62 P.3d at 146-47). "To determine whether a challenged practice significantly impacts the public, Colorado courts consider (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* (quotations omitted). In seeking dismissal of the Indirect Purchaser Plaintiffs' claims under the CCPA, Defendants have addressed none of these factors, and the Court does not find this fact-intensive inquiry appropriate for resolution on a motion to dismiss.

The Court further finds that the Indirect Purchaser Plaintiffs have adequately alleged deceptive conduct under the consumer protection laws of Minnesota and North Dakota. Defendants have made no meaningful argument in this regard, but have simply cited the relevant statutes and asserted without additional elaboration that the indirect purchaser complaint "fails to identify any conduct by Defendants that would meet the pleading requirements for unconscionable, deceptive, or fraudulent conduct[.]" (Dkt. 174-1 at 30). The Court disagrees. The indirect purchaser complaint alleges a great deal of deceptive

conduct by Defendants, including the provision of false information to IHS Markit for the express purpose of manipulating the indexed price of caustic soda. Accepting these allegations as true, as it must at this stage of the proceedings, the Court finds no basis to dismiss the Indirect Purchaser Plaintiffs' Minnesota and North Dakota consumer protection claims. *See Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 196 (Minn. Ct. App. 2007) (the MUDTPA "provide[s] claims that are distinct from the common-law duty not to defraud" and "imposes broad duties not to deceive consumers"); *Ackre v. Chapman & Chapman, P.C.*, 788 N.W.2d 344, 353 (N.D. 2010) (whether or not an act is deceptive and therefore unlawful under the North Dakota consumer fraud statute is "generally a question of fact").

The Court notes that Defendants have also argued that the Indirect Purchaser Plaintiffs cannot seek damages under the MUDTPA and cannot seek restitution under the CCPA. Defendants are incorrect with respect to the MUDTPA—an individual may seek damages under the MUDTPA pursuant to Minnesota's private attorney general statute, Minn. Stat. § 8.31, so long as the "cause of action benefits the public." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 836 (D. Minn. 2012) (citation omitted); *see also Weller v. Accredited Home Lenders, Inc.*, No. CIV. 08-2798 JRTSRN, 2009 WL 928522, at *4 (D. Minn. Mar. 31, 2009). The Indirect Purchaser Plaintiffs' allegations, accepted as true, support a plausible inference of benefit to the public in the event they are successful, because anticompetitive price fixing presents a public harm.

As to Defendants' contention that the CCPA does not allow for restitution, the basis for this position is unclear. Defendants cite Colo. Rev. Stat. § 6-1-113(2) (*see* Dkt. 174-1

at 42), but that statutory subsection states that it applies "[e]xcept in a class action." These actions are, of course, putative class actions. Because Defendants have failed to provide any further elaboration on this argument, the Court must reject it at this stage of the proceedings.

For all these reasons, the Court grants Defendants' motion to dismiss with respect to the consumer protection claims brought under the laws of Alaska, Arizona, California, Illinois, Montana, New Hampshire, New Jersey, North Carolina, Oregon, Utah, and West Virginia, and denies it with respect to the consumer protection claims brought under the laws of Colorado, Minnesota, and North Dakota.

**B. State Law Antitrust Claims**

The Court turns next to the Indirect Purchaser Plaintiffs' state law antitrust claims. Defendants seek dismissal of the antitrust claims brought under the laws of Arizona, Connecticut, the District of Columbia, Illinois, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, and West Virginia. (Dkt. 174-1 at 42). For the reasons discussed below, the Court grants the motion to dismiss with respect to the antitrust claims asserted under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Utah, and West Virginia. The Indirect Purchaser Plaintiffs' Illinois, Kansas, Nevada, and Tennessee antitrust claims will be allowed to proceed.

**1. Failure to Allege a Substantial Effect on Intrastate Commerce**

Defendants argue that the Indirect Purchaser Plaintiffs have failed to state a viable claim under the antitrust laws of Arizona, Connecticut, the District of Columbia, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, and West Virginia, because they have not alleged a substantial effect on intrastate commerce as required by those states' statutes. The Indirect Purchaser Plaintiffs do not contest that, in the relevant jurisdictions, an antitrust suit may be maintained only where the alleged anticompetitive conduct has had meaningful in-state effects. Instead, they argue that their allegation of a broad, nationwide price-fixing scheme is sufficient to support the inference of substantial impacts in every state.

As the Indirect Purchaser Plaintiffs concede in their opposition to Defendants' motion to dismiss, their factual allegations must support the inference that "the challenged conduct—though it may have originated out-of-state—likely [a]ffected commerce in-state, such as by causing residents to pay artificially inflated prices." (Dkt. 195 at 23). In considering whether this standard has been met in analogous cases, federal courts have distinguished between pleadings in which a plaintiff has alleged "intrastate conduct along with conduct throughout the United States," and pleadings that "do[] not contain specific allegations of 'intrastate' conduct along with allegations of conduct 'throughout the United States.'" *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011) (citations omitted). In the latter type of cases, "courts have held allegations under state antitrust statutes insufficient where the complaint alleges only that the conspiracy affects

interstate commerce without describing the effects in a particular state or in discretely identifiable states." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 924 (N.D. Cal. 2019) (dismissing claims asserted "under the antitrust statutes of Kansas, Michigan, Mississippi, New York, North Carolina, South Dakota, Tennessee, West Virginia, Wisconsin, and the District of Columbia" because the plaintiff alleged only a "national conspiracy" that resulted in inflated prices for the defendant's product throughout the United States); *see also In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015) ("The Indirect Plaintiffs have not alleged any facts specific to the District of Columbia and fail to address how Defendants' actions have in any way affected intrastate commerce in the District of Columbia. Similar to the Consumer Plaintiffs, these allegations are not sufficient to establish a connection within the District of Columbia. As the Downstream Purchasers' allegations under the states of Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, Wisconsin, and West Virginia are similarly conclusory without addressing any connection between the individual state and the wrongful conduct, these allegations are also insufficient.").

Here, the Court finds that the Indirect Purchaser Plaintiffs have sufficiently alleged intrastate effects as to the following contested jurisdictions: Kansas, Nevada, and Tennessee. With respect to these three states, the Indirect Purchaser Plaintiffs have specifically alleged that one or more Defendants made sales of caustic soda therein. (Dkt. 129 at 10-11); *see In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d at 407 (allegations that the defendants "produced, licensed, distributed and/or sold Internet Music

in . . . the listed states" sufficient to plead "intrastate conduct or substantial effects in the state" (internal quotation marks omitted)).

However, the Court agrees with Defendants that the Indirect Purchaser Plaintiffs have not adequately alleged intrastate effects in Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and West Virginia. The indirect purchaser complaint contains no specific allegations of sales of caustic soda in these states. Further, contrary to the Indirect Purchaser Plaintiffs' contentions, their factual allegations do not reasonably support the inference of impacts in every state. While it is true that the Indirect Purchaser Plaintiffs estimate that Defendants "produce at least 90% of the domestic supply of Caustic Soda" (Dkt. 129 at 17), they also allege that caustic soda is a "commodity chemical" used for industrial purposes (*id*. at 4) and that Defendants "have historically sold and currently sell" only to "hundreds of purchasers in the United States and elsewhere" (Dkt. 48). In other words, this is not a case involving a high-volume consumer good with many thousands of purchasers, such that a factfinder could reasonably assume that sales had been made in every state. *See In re Broiler Chicken Antitrust Litig*., 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) ("In light of the obvious fact that Broilers are purchased in substantial numbers throughout the United States, these allegations plausibly establish "substantial" intrastate effects. . . ."). On these allegations, the Indirect Purchaser Plaintiffs cannot maintain their antitrust claims under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and West Virginia.

**2. <u>Failure to Give Notice to Attorneys General of Arizona, Nevada, and Utah</u>**

The antitrust laws of Arizona, Nevada, and Utah require a plaintiff to serve a copy of their complaint on the respective attorneys general of those states. *See* Ariz. Rev. Stat. § 44-1415(A), (D); Nev. Rev. Stat. § 598A.210(3); Utah Code § 76-10-3109(9). Defendants contend that the Indirect Purchaser Plaintiff failed to provide the requisite notice, and so their antitrust claims based on these states' laws must therefore be dismissed. In opposition, Plaintiffs contend that (1) these state law notice requirements do not apply in federal court and (2) in any event, "[c]ontemporaneously with the filing of their individual complaints, and approximately eight months before they filed the operative Complaint, [the Indirect Purchaser] Plaintiffs sent notice letters to the attorney general of each state, thus substantively complying with the state statutes." (Dkt. 195 at 19). The Indirect Purchaser Plaintiffs have submitted the attorney declaration of Ryan Gellman confirming their assertion that they provided the requisite notice. (Dkt. 195-1) (the "Gellman Declaration"). In reply, Defendants urge the Court to disregard the Gellman Declaration, arguing that "[the Indirect Purchaser] Plaintiffs may not amend their Complaint by way of declaration or new assertions of fact in an opposition, and the Court generally may not consider documents outside of the Complaint." (Dkt. 202 at ¶ 25).

In light of the fact that the Indirect Purchaser Plaintiffs have in fact provided notice of their complaints to the attorneys general of Arizona, Nevada, and Utah, the Court will not dismiss the Indirect Purchaser Plaintiffs' claims on this basis, and thus need not and does not decide whether the state law notice requirements apply in federal court.

Defendants' arguments regarding the amendment of pleadings and the documents the Court may consider on a Rule 12(b)(6) motion miss the mark. Defendants have cited no cases supporting the conclusion that a plaintiff is required to affirmatively plead compliance with these statutory notice requirements to state a plausible claim. To the contrary, the relevant statutory language is inconsistent with the imposition of such a pleading requirement, as all three statutes provide for notice to the attorney general simultaneous with or after the filing of the complaint. *See* Ariz. Rev. Stat. § 44-1415(A), (D); Nev. Rev. Stat. § 598A.210(3); Utah Code § 76-10-3109(9). It would be nonsensical to require a plaintiff to plead in a complaint that had not yet been filed that he had already provided a copy of that same document to the relevant attorney general at the same time or after it was filed. *See Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 623 (N.D. Cal. 2020) (denying motion to dismiss state law antitrust claims for failure to comply with notice requirements because the plaintiffs had actually provided the requisite notice and were not required to plead the same to state a claim); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 835 (E.D. Pa. 2019) ("Regardless of whether the relevant notice provisions are substantive or procedural, they do not alter the substantive elements of Plaintiffs' claims and are not a pleading requirement for the Complaints.").

### 3. <u>**Illinois' Bar on Indirect Purchaser Class Actions**</u>

The Illinois Antitrust Act (the "IAA") provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General." 740 Ill. Comp. Stat. 10/7(2). Defendants seek dismissal of the Indirect Purchasers Plaintiffs' IAA claims

on this basis, while the Indirect Purchaser Plaintiffs argue that this state law requirement is procedural and does not apply in federal court pursuant to *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

In *Shady Grove*, the Supreme Court "considered whether a New York law prohibiting class actions in any suit seeking penalties or statutory minimum damages precluded a federal court from exercising diversity jurisdiction over a class action." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 414. "A majority of the Court agreed that state class action provisions directly conflict with Rule 23, but the Court split on when Rule 23 preempts a conflicting state class action provision." *Greene v. Gerber Prod*. Co., 262 F. Supp. 3d 38, 59 (E.D.N.Y. 2017). The plurality opinion, authored by Justice Scalia, "found that Rule 23 preempts all state class action provisions," while Justice Stevens "concurred in the narrow holding that Rule 23 and [the relevant New York law] conflict, but agreed with the four-Justice dissent that there are some state procedural rules that federal courts must apply in diversity cases because they function as part of the State's definition of substantive rights and remedies." *Id*. (quotation omitted).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003) (quoting Marks v. United States, 430 U.S. 188, 193 (1977)). Accordingly, while "[t]he Second Circuit has not directly addressed whether Justice Stevens' opinion [in *Shady Grove*] controls, . . . the majority of district and circuit courts that have [considered the

issue have] found Justice Stevens' concurring opinion controls because it provides the 'narrowest grounds' or the 'common denominator' of the majority position." *Greene*, 262 F. Supp. 3d at 59 (collecting cases). Here, both sides have applied Justice Stevens' concurrence in considering whether the IAA's limitation on class actions by indirect purchasers applies, and the Court does the same.

"Courts in this circuit have split as to whether the indirect purchaser class action bar in the IAA is procedural or substantive, under Justice Stevens' concurrence in *Shady Grove*." *Sergeants Benevolent Ass'n*, 2018 WL 7197233, at *32. Having reviewed cases from both within and outside this Circuit, the Court is persuaded that the IAA's indirect class action bar is procedural. As the Court in *Sergeants Benevolent Ass'n* explained, the IAA's class action bar "does not limit the substantive rights of an injured party in an individual action" and "were the IAA to prohibit class actions altogether, the statute would read no differently than the New York class actions bar at issue in *Shady Grove*[.]" *Id*. at *32-33; *see also In re Propranolol Antitrust Litig*., 249 F. Supp. 3d 712, 728 (S.D.N.Y. 2017) ("[T]he Court is persuaded that this state procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action."); *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016) ("I cannot square Shady Grove's allowance of a Rule 23 class action despite New York's class-action bar with the *dis* allowance of a Rule 23 class action in the case of Illinois's class-action bar simply on the basis that Illinois's bar is narrower. It is narrower because its application is limited to indirect-purchaser antitrust claims, and that does tie it more specifically to particular substantive rights; but if New York's state-law bar is not a

procedural rule that alters the scope of a substantive right or remedy, then the narrower scope of Illinois's state-law bar does not make it one that does." (emphasis in original)); *but see In re Digital Music Litig*, 812 F. Supp. 2d at 416 ("Unlike the New York law at issue in *Shady Grove*, [the IAA's] limitation is not contained in a generally applicable procedural rule but, rather, in the same paragraph of the same statute that creates the underlying substantive right."); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417 (D. N.J. 2018) (collecting cases holding that the IAA "is distinguishable from the New York law in *Shady Grove* and that it prohibits indirect purchaser class actions" even in federal court). The Court accordingly will not dismiss the Indirect Purchaser Plaintiffs' IAA claims on this basis.

### 4. **Montana's Status as an *Illinois Brick* State**

Defendants seek dismissal of the Indirect Purchaser Plaintiffs' claims under Montana's antitrust law, contending that Montana follows *Illinois Brick*. The Court agrees. The Supreme Court of Montana has held that the relevant Montana statute was "modeled after the Sherman Act" and that Montana courts would accordingly give "due weight to the federal courts' interpretation of this type of alleged antitrust violation." *Smith v. Video Lottery Consultants, Inc.*, 260 Mont. 54, 58 (1993). Further, Montana has not passed an *Illinois Brick* repealer statue. Thus, under Montana law, "lawsuits by indirect purchasers are barred pursuant to *Illinois Brick*. . . ." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5094289, at *4 (N.D. Cal. Dec. 8, 2010); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.,* 599 F.Supp.2d 1179, 1187 (N.D. Cal. 2009); *cf. Sergeants Benevolent Ass'n*, 2018 WL 7197233, at *57 (dismissing unjust

enrichment claim under Montana law on the basis that Montana is an *Illinois Brick* state). The Court grants the motion to dismiss with respect to the Montana antitrust claims.

### 5. **Lack of a Plaintiff from Utah**

"Under the Utah Antitrust Act [the "UAA"], 'a person who is a citizen of this state or a resident of this state' can bring a claim." *In re Effexor Antitrust Litig.,* 357 F. Supp. 3d 363, 393 (D.N.J. 2018) (quoting Utah Code § 76-10-3109(1)(a) and original alteration omitted). "The majority of courts that have been presented with this statute require at least one Utah citizen or resident be a named plaintiff." *Id*. However, some courts have found that "a class representative that is not a Utah citizen or resident may bring claims on behalf of absent class members who are citizens or residents of Utah." *In re Zetia (Ezetimibe) Antitrust Litig*., 400 F. Supp. 3d 418, 435 (E.D. Va. 2019).

In the absence of any controlling authority, the Court adopts the majority approach and concludes that, to state a claim under the UAA, there must be a named plaintiff who is a Utah citizen or resident. It is well-established that a member of a putative class is not a party to a lawsuit, *see In re Oxford Health Plans, Inc. Sec. Litig*., 244 F. Supp. 2d 247, 251 (S.D.N.Y. 2003) ("A 'plaintiff' is a party to the lawsuit. Absent class members whose interests are represented by a Plaintiff are not parties to the lawsuit." (collecting cases)), and the plain language of the UAA states that a Utah citizen or resident must "bring" the action, Utah Code § 76-10-3109(1)(a), not merely be benefited thereby. Accordingly, the Court dismisses the Indirect Purchaser Plaintiffs' claims under the UAA, as it is conceded that no named Plaintiff is a citizen or resident of Utah.

In sum, and for the foregoing reasons, the Court dismisses the antitrust claims asserted under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Utah, and West Virginia. The antitrust claims asserted under the laws of Illinois, Kansas, Nevada, and Tennessee will be permitted to proceed.

**C. Unjust Enrichment Claims**

Defendants seek dismissal of all the unjust enrichment claims asserted by the Indirect Purchaser Plaintiffs, for a variety of reasons. (*See* Dkt. 174-1 at 46-47). The Court need not and does not reach the majority of these arguments because it agrees with Defendants that the Indirect Purchaser Plaintiffs' conclusory allegations of unjust enrichment do not comply with the relevant pleading standards.

The Court finds the decision in *In re Aggrenox Antitrust Litig*., 94 F. Supp. 3d 224 (D. Conn. 2015) instructive. As the court in *In re Aggrenox* explained, the indirect purchaser plaintiffs in that case, like the Indirect Purchaser Plaintiffs here, had "pleaded federal antitrust claims and the factual foundation for them," and then "merely allege[d] that those claims are also actionable . . . as unjust enrichment." *Id*. at 255. This sort of generic pleading does not satisfy Federal Rule of Civil Procedure 8, as interpreted by the Supreme Court in *Twombly* and *Iqbal*. *Id*. ("The indirect purchasers . . . have *listed* claims under very many state laws, but they have not truly pleaded claims under those laws sufficient to show their entitlement to recovery under them, as required by Rule 8. (emphasis in original)). The Indirect Purchaser Plaintiffs "cannot simply enumerate a long

list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law." *Id*. at 255-56. Indeed, "[s]tate law requirements under unjust enrichment law vary widely," *In re Packaged Ice Antitrust Litig*., 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011), and the undifferentiated unjust enrichment claims set forth in the indirect purchaser complaint provide neither Defendants nor the Court with sufficient information to assess their adequacy *See also In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("Unjust enrichment is not a catch-all claim existing within the narrow scope of federal common law," and "cobbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law.").

To give just one example of why the Indirect Purchaser Plaintiffs' failure to specifically address the factual requirements of an unjust enrichment claim under the various asserted laws matters, under New York law, a plaintiff claiming unjust enrichment must establish that the relationship between the parties is not "too attenuated," *Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted), meaning that "[t]he relationship must be one that could have caused reliance or inducement." *Crescimanni v. Trovato*, 162 A.D.3d 849, 851 (2d Dep't 2018). The indirect purchaser complaint contains no factual allegations addressing this requirement of New York law, instead addressing only the generic elements of an unjust enrichment claim. This is the type of formulaic, conclusory pleading that *Twombly* and *Iqbal* are meant to eliminate. The

Court accordingly agrees with Defendants that the Indirect Purchaser Plaintiffs' unjust enrichment claims should be dismissed.

**D. <u>Clayton Act Claim for Injunctive Relief</u>**

The Court turns finally to the viability of the Indirect Purchaser Plaintiffs' claim for injunctive relief under § 16 of the Clayton Act, 5 U.S.C. § 26. Relying on *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) and *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6 (D.D.C. 2004), Defendants argue that injunctive relief under the Clayton Act is not available because "Plaintiffs fail to plead any facts suggesting they face a real and immediate threat of continuing harm justifying the injunctive relief they seek." (Dkt. 174-1 at 57-58). The Court disagrees.

"In order to seek injunctive relief under § 16, a private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (quotation omitted). Here, the Indirect Purchaser Plaintiffs have alleged that Defendants are engaged in an ongoing anticompetitive conspiracy that continues to result in artificially inflated prices for caustic soda. This is sufficient to allow the Indirect Purchaser Plaintiffs to proceed on their request for injunctive relief under § 16. *See In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 457 (E.D. Pa. 2018) (allowing indirect purchasers to bring claims for injunctive relief under § 16 where they alleged an ongoing conspiracy that increased the price of certain generic drugs); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d at 813 (allowing indirect

purchasers to bring claims for injunctive relief under § 16 where they alleged price-fixing conspiracy related to broiler chickens).

The cases on which Defendants rely are distinguishable. In *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, the First Circuit explained that the wrongdoing alleged by the plaintiffs relied on the existence of a "'perfect storm' that allegedly precipitated massive arbitrage opportunities for selling Canadian cars in the United States" and that said "perfect storm" had "ceased long ago." 522 F.3d at 14. Further, the plaintiffs had failed to "demonstrate whether or when prevailing conditions—primarily, exchange rates between Canada and the United States—might reasonably be expected once again to resemble those during the class period." *Id*. By contrast, in this case, there is no indication that there were external factors that combined to create a unique price-fixing opportunity, nor any reason to think that Defendants could not continue to engage in the misconduct alleged in the indirect purchaser complaint under present market conditions.

Similarly, in *In re Nifedipine Antitrust Litig.*, there existed a Federal Trade Commission consent order that had "disbanded the Distribution Agreement between the defendants and required the companies to take various steps to introduce competition to the market[.]" 335 F. Supp. 2d at 16. The existence of this consent order eliminated any "real and immediate threat of future injury," and so the court dismissed the § 16 claim for injunctive relief. *Id*. Again, there are no comparable facts here, and so the opinion in *In re Nifedipine Antitrust Litig*. is inapposite. The Court finds no basis, at this stage of the proceedings, to dismiss the claim for injunctive relief under § 16 of the Clayton Act.

## III. Leave to Amend

In their opposition papers, the Indirect Purchaser Plaintiffs state as follows:

> Should the Court grant any part of Defendants' partial motion to dismiss, the "usual practice" in the Second Circuit is to permit leave to replead to correct pleading deficiencies. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Frederick v. New York*, 232 F. Supp. 3d 326, 335 (W.D.N.Y. 2017) (Wolford, J.). The Court should "freely give leave when justice so requires." Fed. R.Civ. P. 15(a)(2).

(Dkt. 195 at 17). To the extent this paragraph was intended to be a request for leave to amend, it "is not a proper motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (explaining that, among other things, this District's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)). The Court therefore exercises its discretion to deny this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009).

However, the Court does believe that certain of the claims discussed above could potentially be appropriately pled. Specifically, the Court finds that the dismissal of the unjust enrichment claims and the antitrust claims under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and West Virginia

should be without prejudice to filing a proper motion for leave to amend.[4] Further, while the deadline for filing motions for leave to amend expired on March 31, 2021 (*see* Dkt. 256), the Court finds that good cause exists to make an exception to that deadline for the filing of such a motion. To the extent the Indirect Purchaser Plaintiffs wish to seek leave to amend the identified claims, they may file a motion seeking such relief within 45 days of the date of this Decision and Order, as set forth below.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion (Dkt. 174) for partial dismissal of the indirect purchaser complaint (Dkt. 129). Specifically, the Court rules as follows: (1) the Indirect Purchaser Plaintiffs' consumer protection claims asserted under the laws of Arkansas, Delaware, the District of Columbia, Georgia, Idaho, Indiana, Kansas, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Pennsylvania, Rhode Island, South Carolina, Virginia, Wisconsin, and Wyoming are withdrawn without prejudice; (2) the Indirect Purchaser Plaintiffs' consumer protection claims asserted under the laws of Alaska, Arizona, California, Illinois, Montana, New Hampshire, New Jersey, North Carolina, Oregon, Utah, and West Virginia are dismissed with prejudice; (3) the Indirect Purchaser Plaintiffs' antitrust law claims

---

[4] As discussed above, the Indirect Purchaser Plaintiffs have agreed to withdraw their consumer protection claims asserted under the laws of Arkansas, Delaware, the District of Columbia, Georgia, Idaho, Indiana, Kansas, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Pennsylvania, Rhode Island, South Carolina, Virginia, Wisconsin, and Wyoming. (*See* Dkt. 195 at 29 n. 12). While the dismissal of these claims is without prejudice, the Court's extension of the deadline for filing a motion for leave to amend does not apply to these claims.

asserted under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and West Virginia are dismissed without prejudice; (4) the Indirect Purchaser Plaintiffs' antitrust claims asserted under the laws of Montana and Utah are dismissed with prejudice; and (5) the Indirect Purchaser Plaintiffs' unjust enrichment claims are dismissed without prejudice. Defendants' motion to dismiss the indirect purchaser complaint is denied in all other respects.

The Indirect Purchaser Plaintiffs may file a motion to amend the unjust enrichment claims and the antitrust claims under the laws of Arizona, Connecticut, the District of Columbia, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and West Virginia within 45 days of the date of this Decision and Order, consistent with their obligations under Federal Rule of Civil Procedure 11. In the event the Indirect Purchaser Plaintiffs file such a motion, the Court will set a briefing schedule and any obligation on the part of the Defendants to answer the indirect purchaser complaint will be stayed. However, in the event that no motion for leave to amend is filed, Defendants shall answer the indirect purchaser complaint within 60 days of the date of this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 24, 2021
Rochester, New York